UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

**ROBERT LOUIS PAIGE**  **CIVIL ACTION NO. 3:13-cv-2836**
   **LA. DOC #114180**
**VS.** **SECTION P**

**JUDGE DONALD E. WALTER**

**RICKEY JONES, SHERIFF, ET AL.**  **MAGISTRATE JUDGE KAREN L. HAYES**

REPORT AND RECOMMENDATION

*Pro se* plaintiff Robert Louis Paige, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 8, 2013.  Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Tensas Parish Detention Center (TPDC) and complains about conditions of confinement at that prison. He initially sued Sheriff Rickey Jones, Warden John Smith, and Dy. Warden Fred Schoonover seeking compensatory and punitive damages and a transfer to another prison. In an amended complaint he added Lt. McCrane and Dy. Washington as defendants. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff is a DOC inmate who is incarcerated at TPDC. In his original complaint he alleged that on February 5, 2013, the facility's nurse practitioner ordered that plaintiff be provided a bottom bunk with a thicker mattress due to plaintiff's pre-existing and unspecified back condition. However, the security staff refused to honor the order and plaintiff has been

forced to sleep in a top bunk with a thin mattress.

In his original complaint he also complained about the manner in which medication is dispensed to him and his fellow inmates; about unsanitary and uncomfortable conditions of confinement; about inmate violence; and, about strip searches and security concerns.[1] [See Doc. 1]

On December 9, 2013, he was directed to amend his complaint. The Amend Order observed, "Plaintiff has named three defendants [Jones, Smith, and Schoonover] but has not alleged fault on their part. Further, plaintiff has not described the nature of the injury he sustained as a result of each alleged violation...."; plaintiff was then directed to amend his complaint so as to "... state what EACH defendant did to violate plaintiff's rights and ... provide a detailed statement of the injuries he sustained." [Doc. 7]

On January 6, 2014, he filed an amended complaint. He abandoned his complaints about the dispensation of medication, the poor maintenance and unsanitary conditions at the prison, and

---

[1] More specifically, he complained that medication is normally provided twice daily – between 7 a.m. and 9 a.m. and then again between 7 p.m. and 9 p.m.; however on "several" occasions medication was delayed until after midnight on the evening shift and when Federal immigration detainees arrive at or depart the facility, medication was delayed until 1 a.m.

He also complained that the facility is "poorly maintained" – the rooms are full of second-hand tobacco smoke and the shower walls and floors are full of mold and mildew. The air conditioning was out during the months of April, May, and June 2013. On June 29, 2013 the power went out leaving the facility in darkness.

Plaintiff also alleged that he has been incarcerated at TPDC since January 17, 2013, and that he is aware of at least 3 inmate stabbings, on June 29, July 12, and October 1, 2013, and one hanging on some unspecified date. Plaintiff complained that the dorms lack sufficient security because the officers enter the dorms on 2-3 times per 12 hour shift.

Finally he complained about the security shake downs and the policy of strip searching inmates in the presence of other inmates and female prison guards.

his concerns about prison security and instead expanded his complaint about his assigned sleeping arrangements.

More specifically, he alleged that prior to entering into DOC custody in 2009, he suffered from "degenerative spine disorder" which causes him to experience pain and limited mobility. He was prescribed and still receives the following medications – Meloxicam, Methocarbamol and, Gabapentin.[2] He alleged that on February 5, 2013, Nurse Practitioner Evelyn Spinks issued a "Care Plan/Special Needs" order directing that plaintiff be afforded a lower bunk and a thick mattress due to unspecified medical conditions. This directive was apparently complied with until April 18 -19, 2013, when plaintiff was moved to a dorm where the only unoccupied bunk – an upper bunk with a regular mattress – was assigned to him.

According to plaintiff, he then complained to Lt. McCrane who in turn advised him to voice his complaints to Dy. Washington who is in charge of bunk assignments. Thereafter, on April 22, 2013, plaintiff advised Washington of his needs; however, she refused his request and

---

[2] Meloxicam is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). Meloxicam is in a class of medications called nonsteroidal anti-inflammatory drugs (NSAIDs). It works by stopping the body's production of a substance that causes pain, fever, and inflammation. Methocarbamol is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. Methocarbamol is in a class of medications called muscle relaxants. It works by slowing activity in the nervous system to allow the body to relax. Gabapentin is used to help control certain types of seizures in people who have epilepsy. Gabapentin is also used to relieve the pain of postherpetic neuralgia (PHN; the burning, stabbing pain or aches that may last for months or years after an attack of shingles). Gabapentin is in a class of medications called anticonvulsants. Gabapentin treats seizures by decreasing abnormal excitement in the brain. Gabapentin relieves the pain of PHN by changing the way the body senses pain. Medline Plus, A Service of the U.S. National Library of Medicine, National Institutes of Health, Drugs & Supplements.

See http://www.nlm.nih.gov/medlineplus/druginformation.html

3

threatened a disciplinary write up and placement in "the hole" should plaintiff move without permission. Plaintiff then wrote grievances to Warden Smith and Assistant Warden Schoonover; however, he received no response. Then, on August 29, 2013, plaintiff spoke with Schoonover who promised to "look into it." His subsequent written grievance to Schoonover was again ignored.

Plaintiff now is forced to climb into his top bunk and to drop or jump down when exiting. According to plaintiff, these actions place a strain on his back and extreme pain to his legs and lower back. He claims that this arrangement has resulted in the loss of mobility and increased pain. He has been medicated from time to time with steroid injections, and, while he has noted that other prisoners have been afforded changes to their bunk assignment, based not on medical considerations but instead upon "personal desire."

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based

on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## 2. Conditions of Confinement

Complaints about prison conditions, including lack of adequate medical care, are analyzed under the Eighth Amendment which prohibits the imposition of cruel and unusual punishment, including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). While the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions or circumstances "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's plight. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be 'cruel and unusual' under contemporary standards. *Rhodes v. Chapman*, 452 U.S.

337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

Plaintiff's complaint simply does not rise to the level of an Eighth Amendment violation. To rise to that level, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Further, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N .D.Tex.1997); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Plaintiff complains that despite his back ailments and the recommendation of a nurse practitioner, he has been assigned a top bunk and a regular mattress. However, plaintiff has alleged nothing more than discomfort and inconvenience and with respect to his conditions of confinement and medical care claim; he has not alleged that he was subjected to inhumane conditions of confinement and, more importantly, he has not alleged that he suffered any harm that was more than *de minimus*. Indeed, he complains that as a result of his current bunk assignment he has experienced pain and limited mobility. However as noted above, those were the symptoms he initially claimed were associated with his pre-existing condition. In short, his

complaint fails to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 7, 2014.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

7